IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENJU PHARMACEUTICAL CO., LTD., KYORIN PHARMACEUTICAL CO., LTD. and ALLERGAN, INC., <br> Plaintiffs, <br> v. <br> APOTEX, INC., APOTEX CORP. and APOTEX PHARMACHEM INDIA, PVT, LTD., <br> Defendants. | ) ) ) ) ) ) C.A. No. 07-779-***-LPS ) ) ) ) ) |

**APOTEX CORP AND APOTEX, INC.'S MOTION TO
PARTIALLY DISMISS PLAINTIFFS' COMPLAINT**

Defendants Apotex Corp. and Apotex, Inc., by their attorneys Locke Lord Bissell & Liddell LLP, submit this motion to dismiss Counts II and III of Plaintiffs' Complaint for Patent Infringement (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that, under 35 U.S.C. § 271(e)(1), the activities alleged against defendants in Counts II and III are explicitly designated as non-infringing by federal statute and by this Court's precedent. Because the Complaint expressly avers that all of the actions alleged in Counts II and III of the Complaint were solely related to the "safe harbored" acts of obtaining regulatory approval, Counts II and III must be dismissed for failure to state a claim upon which relief may be granted. In addition, Counts II and III must be dismissed because they allege *inducement* of infringement, and this Court has held that an action for inducement of infringement cannot be brought under the Hatch-Waxman Act.

**BACKGROUND**

This is a patent infringement case brought under the Hatch-Waxman Act. The Hatch-Waxman Act authorizes the submission of Abbreviated New Drug Applications ("ANDAs"), in order to expedite the approval of lower-cost generic drugs. *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 676 (1990). As part of that statutory scheme, the Hatch-Waxman Act creates a

safe harbor, codified as 35 U.S.C. § 271(e)(1) (the "Safe Harbor Provision"), for activities that might otherwise constitute patent infringement – such as those alleged by Plaintiffs in Counts II and III – in order to permit generic drug companies to conduct research "reasonably related" to obtaining regulatory approval of the generic product, such as filing an ANDA. *See id.* at 677. The Safe Harbor Provision was designed to work in conjunction with 35 U.S.C. § 271(e)(2), which makes filing an ANDA on a patent claiming the relevant drug or its use a technical act of infringement. *Id.* at 678. 35 U.S.C. § 271(e)(2) is the statutory section under which Plaintiffs have brought suit. (Compl. ¶ 1.)

In *Eli Lilly*, the Supreme Court discussed Congress's rationale for creating the Safe Harbor Provision. 496 U.S. at 669-71. Under the patent laws, it is an act of infringement to make, use, sell, or offer to sell an infringing product. 35 U.S.C. § 271(a). *Id.* at 669. In 1984, the Federal Circuit held that the manufacture, use, or sale of a patented invention was an act of infringement "even if it was for the sole purpose of conducting tests and developing information necessary to apply for regulatory approval." *Id.* at 670 (discussing the holding in *Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858 (Fed. Cir. 1984)). Thus, under *Roche*, companies seeking FDA approval for a generic version of a drug product could not even begin their research and development efforts until after the patent expired. Generic market entry would be further delayed by the time it takes to obtain regulatory approval from the FDA. Because of the *Roche* decision, "the patentee's de facto monopoly would continue for an often substantial period until regulatory approval was obtained," which created "an effective extension of the patent term." *Eli Lilly*, 496 U.S. at 670.

Congress sought to right this inequitable situation through the 1984 Hatch-Waxman amendments to the Federal Food, Drug, and Cosmetic Act ("FDCA"). Specifically, Section 202

of the Hatch-Waxman amendments, which is codified at 35 U.S.C. § 271(e)(1), exempts from infringement liability "all uses of patented inventions that are reasonably related to the development and submission of *any* information under the FDCA." *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 201 (2005). After enactment of this safe harbor provision, generic drug companies could, among other things, make and use the patented drug in connection with its efforts to file an ANDA seeking FDA approval without concern that these actions could constitute patent infringement.

Apotex Corp. is the holder of an ANDA that was filed with the Federal Drug Administration (the "FDA") for marketing approval of gatifloxacin ophthalmic solution 0.3%. (Compl. ¶ 23.) As stated above, the ANDA process allows a pharmaceutical company to seek expedited approval for generic versions of drug products previously approved for sale in the United States. The FDA's publication, *Approved Drug Products With Therapeutic Equivalence Evaluations* (the so-called "Orange Book"), lists drug products which are marketed in the United States pursuant to an approved New Drug Application ("NDA"), as well as the patents that cover (according to the patentee) the marketed product and for which a claim of infringement could reasonably be asserted against a person who, without authorization, manufactures, uses, or sells the drug product. 21 C.F.R. § 314.53(b).

With respect to the listed patents, an ANDA application must contain one of four certifications concerning the listed patents, namely that: (I) no patent information has been filed, (II) the patents have expired, (III) the ANDA applicant will not market the drug until the patents expire, or (IV) the patents are invalid or will not be infringed by the manufacture, use or sale of the generic applicant's drug product. 21 U.S.C. §355(j)(2)(A)(vii)(I-IV). If an ANDA applicant makes the last certification (*i.e.*, a Paragraph IV certification), it must notify the patentee and the

NDA holder of its certification, 21 U.S.C. § 355(j)(2)(B)(ii), and the patentee and/or NDA holder then must decide whether to sue for infringement under the Hatch-Waxman Act. If the patentee and/or NDA holder file suit within forty-five (45) days after receipt of the notice letter, approval of the ANDA is automatically stayed for 30-months. See 21 U.S.C. § 355(j)(4)(B)(iii). The patentee or NDA holder does not have to make any showing on the merits in order to obtain the 30-month stay of approval of the ANDA, it need only file suit.

In keeping with this process, on October 17, 2007, Apotex Corp. advised the Plaintiffs of its ANDA filing and asserted that Plaintiffs' U.S. Patent Nos. 5,880,283 (the " '283 patent") and 6,333,045 (the " '045 patent") would not be infringed by Apotex Corp.'s commercial sale of gatifloxacin ophthalmic solution 0.3%. (Compl. ¶¶ 24 – 26.) Plaintiffs subsequently brought this action for infringement only as to the '045 patent.[1] (Compl. ¶ 1.) The Complaint lists not only Apotex Corp. as a defendant, but also Apotex, Inc. and Apotex Pharmachem India, PVT, Ltd. ("Apotex India").[2] (Compl. ¶¶ 5-12.) Plaintiffs fail to differentiate between the three Defendants in their prayer for relief. (Compl. ¶ 31-56.)

Count II of the Complaint alleges, in essence, that Apotex, Inc. induced the infringement of the '045 patent by manufacturing gatifloxacin ophthalmic solution 0.3% and by selling the solution to Apotex Corp. (Compl. ¶¶ 38 – 47.) Count III of the Complaint alleges, in essence, that Apotex India induced the infringement of the '045 patent by selling gatifloxacin API (the active pharmaceutical ingredient in gatifloxacin ophthalmic solution 0.3%) to Apotex, Inc. and to Apotex Corp. (Compl. ¶¶ 49 – 56.)

---

[1] While denying that any infringement of the '045 patent has occurred, Apotex Corp. and Apotex, Inc. also note that Plaintiffs admit that they make no claim of infringement of the '283 patent in their complaint. (Compl. ¶ 27.) Simultaneously with this motion, Apotex Corp. and Apotex, Inc. have counterclaimed for a declaratory judgment that the '283 patent has not been, and will not be, infringed by Apotex Corp.'s or Apotex, Inc.'s drug product. (Defendant Apotex Corp.'s Answer, Affirmative Defenses and Counterclaim to Plaintiff's Compl. Count III, Defendant Apotex, Inc.'s Answer, Affirmative Defenses and Counterclaim to Plaintiff's Compl. Count III.)

[2] It is the moving parties' belief that Apotex India has not yet been served in connection with this action.

## ARGUMENT

"A court should dismiss a complaint ' ... if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 05-590 GMS, 2006 WL 2375035, *5 (D. Del, Aug. 16, 2006). "Under the ... standard of a [Rule 12(b)(6)] motion to dismiss, all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true, but neither inferences nor conclusions of fact unsupported by allegations of specific facts upon which the inferences or conclusions rest are accepted as true." *Tower Air, Inc. v. Nachtomi, et al.*, 416 F.3d 229, 235 (3d Cir. 2005) (internal citations omitted). Because the acts alleged to have occurred in Counts II and III of Plaintiffs' Complaint all fall squarely within the safe harbor provision of 35 U.S.C. § 271(e)(1) and because this Court's precedent states that Safe Harbor Provision precludes a claim for inducement of infringement under the Hatch-Waxman Act, Apotex Corp. and Apotex Inc. respectfully move that these Counts be dismissed for failure to state a claim upon which relief can be granted.

I.  **The Allegations Contained in Counts II and III are Explicitly Designated As Non-Infringing by the Hatch-Waxman Act's Safe Harbor Provision**

The Hatch-Waxman Act's Safe Harbor Provision provides that:

> It shall not be an act of infringement to *make, use, or sell* a patented invention ... *solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs*.

35 U.S.C. § 271(e)(1) (emphasis added).[3]

The Safe Harbor Provision was enacted to protect drug manufacturers while they

---

[3] The phrase "patented invention" is defined to include drugs. *Eli Lilly*, 496 U.S. at 665. It should also be noted that although the Safe Harbor Provision uses the words "to make, use, or sell" a patented invention, Courts hold many other activities to be protected by the Safe Harbor Provision. *See, e.g. Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1523-1524 (Fed. Cir. 1992) (holding that "reporting clinical trial progress to investors, analysts and journalists, and describing clinical trial results in a private fund-raising memorandum" were protected acts under the Safe Harbor Provision)

"conduct[] the extensive field tests of their products that [are] necessary to generate the data that the FDA require[s] before granting permission to market the drugs commercially." *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1269, 1276 (N.D. Cal. 1991), *aff'd, Intermedics, Inc. v. Ventritex, Inc.*, 991 F.2d 808 (Fed. Cir. 1993) (the Hatch-Waxman Act "contains an exception to th[e] general infringement rule ... which permits competitors of a patentee to engage in what would constitute infringing activities before the patent expires so long as those activities are reasonably related to obtaining regulatory approval."). All of the acts complained of in Counts II and III are undeniably exempted from liability under the Safe Harbor Provisions. Counts II and III of the Complaint must therefore fail as a matter of law given the absolute protection of 35 U.S.C. § 271(e)(1).

For example, Counts II and III allege:

- That "Apotex, Inc. sold the gatifloxacin ophthalmic solution 0.3% to Apotex Corp. *knowing that the solution's only use was to prepare and file an ANDA with the FDA.*" (Compl. ¶¶ 43 – 44 (emphasis added).)

- That "Apotex, Inc. at the time it sold the gatifloxacin ophthalmic solution 0.3% to Apotex Corp., *intended that Apotex Corp. file an ANDA to seek regulatory permission* to sell the gatifloxacin ophthalmic solution 0.3%." (Compl. ¶ 45 (emphasis added).)

- That "Apotex, Inc. offered the gatifloxacin ophthalmic solution 0.3% to Apotex Corp. to induce Apotex Corp. to file an ANDA *seeking regulatory permission* to sell the gatifloxacin ophthalmic solution 0.3%." (Compl. ¶ 46 (emphasis added).)

- That "Apotex India has authorized the *FDA to refer to its DMF [Drug Master File] in examining Apotex Corp.'s ANDA.*" (Compl. ¶ 51 (emphasis added).)

- That Apotex India induced Apotex Corp. to use its gatifloxacin API in Apotex Corp.'s gatifloxacin ophthalmic solution 0.3% and to market its gatifloxacin ophthalmic solution 0.3%, while having actual knowledge of the '045 patent. (Compl. ¶¶ 52 – 53.)

- That "Apotex India sold its gatifloxacin API to Apotex, Inc. *knowing that its only use was to prepare gatifloxacin ophthalmic solution 0.3% for use in the preparation of and filing of an ANDA.*" (Compl. ¶¶ 49, 54 (emphasis added).)

- That "Apotex India sold its gatifloxacin API to Apotex Corp. *knowing that its only use was to prepare gatifloxacin ophthalmic solution 0.3% for use in the preparation of and*

6

149455

*filing of [an] ANDA."* (Compl. ¶¶ 50, 55 (emphasis added).)

- That "Apotex India sold its gatifloxacin API to Apotex Corp.'s formulator of gatifloxacin ophthalmic solution 0.3% *knowing that its only use was to prepare gatifloxacin ophthalmic solution 0.3% for use in the preparation of and filing of [an] ANDA."* (Compl. ¶ 56 (emphasis added).)

While Apotex Corp. and Apotex, Inc. do not concede these allegations are true, even if all of these allegations are taken as true for the purpose of this motion, the actions, as pleaded, fall squarely within the Safe Harbor Provision. *See Telectronics*, 982 F.2d 1522-23.

Making or selling a drug product to be used solely for ANDA filings are acts that are undeniably reasonably related to the development and submission of information under the FDCA. *Merck*, 545 U.S. at 193 ("The statutory text makes clear that § 271(e)(1) provides a wide berth for the use of patented drugs in activities related to the federal regulatory process, including uses reasonably related to the development and submission of any information under the FDCA."). Thus, the plain meaning of the Safe Harbor Provision explicitly designates as non-infringing those acts alleged in Counts II and III of the Complaint.

## II. Claims for Inducement of Infringement Are Not Permitted Under the Hatch-Waxman Act

Counts II and III must also be dismissed because this Court, in keeping with other Federal Courts throughout the country, has held that the Safe Harbor Provision precludes a claim for inducement of infringement, the only claim alleged in Counts II and III, where the accused action was reasonably related to the development and submission of information under the FDCA.

In *Pfizer Inc. v. Ranbaxy Laboratories Ltd.*, this Court held that aiding and abetting another's filing of an ANDA *does not* constitute inducement of patent infringement. 321 F. Supp. 2d 612, 618 (D. Del 2004). In *Pfizer*, Plaintiffs alleged that inducement of infringement had occurred under 35 U.S.C. § 271(b). *Id.* at 615. This Court noted that "Plaintiffs' claim for

7

149455

inducement of infringement cannot be considered without referring to Section 271(e), because without infringement under Section 271(e) there would be no claim for inducement under Section 271(b)". *Id.* at 617 (internal citations omitted). This Court concluded that:

> To allow one to be liable for inducement of infringement based solely on activities related to the preparation of the ANDA filing would undercut Section 271(e)(1) [the Safe Harbor Provision] and discourage entities from participating in the research and other activities needed to submit an ANDA application, a result which is clearly at odds with the purposes of the Hatch-Waxman Act, and therefore, [this Court] decline[s] to adopt such an interpretation.

*Id.* at 618.

Other courts have reached similar decisions. The U.S. District Court, Southern District of New York, held that manufacturers and sellers of bulk pharmaceutical compounds could not be held liable for inducing generic manufacturers to infringe patents. *Astrazeneca AB v. Mylan Laboratories, Inc.*, 265 F. Supp. 2d 213, 217-218 (S.D.N.Y. 2003) ("whether the submission of an ANDA was induced is not the proper subject of a Hatch-Waxman action" and therefore "the Court finds that an action for inducement for aiding and abetting the filing of an ANDA is unavailable."). The U.S. District Court, Northern District of West Virginia, held that assertion of inducement claims against suppliers who aided and abetted a manufacturer's filing of an ANDA was not warranted. *Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.*, 267 F. Supp. 2d 545, 549 (N.D. W. Va. 2003) (Plaintiffs sought to amend their complaint to add a claim against the manufacturer and supplier of bulk levofloxacin, and the Court refused because their "activity is excepted from infringement by 35 U.S.C. § 271(e)(1)"); *see also Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 495 (E.D. Va. 2005) ("While 'active inducement' requires 'an affirmative act of some kind,' the majority of courts have held that allegations of activities done in the preparation of an ANDA application are not enough").

And these results make sense because in order for there to be liability for inducement to

149455

infringe, there has to be an act that constitutes actual infringement. *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). As seen from section I above, all the acts that Plaintiff's contend are infringing acts in Counts II and III are exempted from liability under the Safe Harbor Provision. Thus, because there cannot be liability for actual infringement, there also cannot be any liability for inducement to infringe.

Here, Counts II and III allege that "Apotex, Inc.'s activities constitute … inducement to infringe the '045 patent" and that "Apotex India … induced Apotex Corp. to use its gatifloxacin API." (Compl. ¶¶ 47 - 52.) Based on unambiguous precedents in the District of Delaware and in keeping with courts throughout the country, such claims for inducement cannot be brought under the Hatch-Waxman Act. Counts II and III must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Apotex Corp. and Apotex Inc. respectfully request that this Court (i) dismiss Counts II and III of the Complaint for failure to state a claim upon which relief can be granted, (ii) award Apotex Corp. and Apotex Inc. attorneys' fees in connection with this motion, and (iii) grant Apotex Corp. and Apotex Inc. such other and further relief as the Court may deem just and proper.

Dated: January 22, 2007

Respectfully Submitted,

/s/Francis J. Murphy
Francis J. Murphy, DE I.D. No. 223
MURPHY & LANDON
1011 Centre Road, Suite 210
Wilmington, Delaware  19805
(302) 472-8103
(302) 472-8135 (fax)
fmurphy@msllaw.com

149455

*Of Counsel:*
David G. Greene
Alan B. Clement
Sarah M. Chen
LOCKE LORD BISSELL & LIDDELL LLP
885 Third Avenue, 26th Floor
New York, NY 10022
(212) 947-4700
(212) 947-1202
dgreene@lockelord.com
aclement@lockelord.com
schen@lockelord.com

Keith D. Parr
Scott B. Feder
Kevin M. Nelson
David B. Abramowitz
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Dr.
Chicago, Illinois 60606
312-443-0700
312-443-0336 (fax)
kparr@lockelord.com
sfeder@lockelord.com
knelson@lockelord.com
dabramowitz@lockelord.com

**Attorneys for Defendant
Apotex Corp.**

149455

## CERTIFICATE OF SERVICE

The undersigned on oath states that foregoing **APOTEX CORP AND APOTEX, INC.'S MOTION TO PARTIALLY DISMISS PLAINTIFFS' COMPLAINT** was served on the following counsel by electronic filing with the Court's ECF system and by placing a true and correct copy in the U.S. Mail on this 22nd day of January, 2008.

Jack B. Blumenfeld
Maryellen Noreika
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

Richard D. Kelly
William T. Enos
Stephen G. Baxter
Frank J. West
OBLON, SPIVAK, McCLELLAND,
 MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
rkelly@oblon.com
wenos@oblon.com
sbaxter@oblon.com
fwest@oblon.com

**MURPHY & LANDON**

/s/Francis J. Murphy
Francis J. Murphy, DE I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, Delaware 19805
(302) 472-8103
(302) 472-8135 (fax)
fmurphy@msllaw.com

149455